FILED
CLERK, U.S. DISTRICT COURT

September 9, 2021

CENTRAL DISTRICT OF CALIFORNIA
BY: ___dr___ DEPUTY

1 Dennis Anthony Brown
2 (657) 293-3150
  Address withheld per F.R.Crim.P 49.1
3 Corona, CA 92882
  skysharka2503@yahoo.com
4 Appearing in *Propria Persona* (*pro se*)
5

6              UNITED STATES DISTRICT COURT
7              CENTRAL DISTRICT OF CALIFORNIA
8                     EASTERN DIVISION
9
10 | UNITED STATES OF AMERICA, | Case No. 5:08-CR-0205-SGL-1 |
   |                Plaintiff, |                              |
11 |                           |                              |
12 | v.                        | **SECOND MOTION FOR EARLY**  |
   |                           | **TERMINATION OF**           |
13 |                           | **SUPERVISED RELEASE**       |
14 | DENNIS ANTHONY BROWN,     |                              |
   |                Defendant. | Hearing Date: None Requested |
15 |                           | Hearing Time: None Requested |
16
17
18
19 **NOW COMES** DENNIS ANTHONY BROWN, motioning this Court *in propria*
20 *persona* (*pro se*) to terminate the imposed term of supervised release, reducing such
21 to a "time already served" duration. This request is made pursuant to title 18 United
22 States Code §3583(e) and Federal Rules of Criminal Procedure 32.1(c). Under the
23 same rule of criminal procedure, no hearing is requested in this matter.
24       This document is submitted in paper form in accordance with L.Cr.R. 49-1.2(a)
25 (1), and is written in accordance with L.R. 11-3 & 11-6 and what follows is a concise
26 memorandum of case history, points of authority, and argument. It is written in
27 double-space, 14-point Times New Roman and is less than twenty-five (25) pages
28 long.

## I. Procedural History

On October 21, 2009 I was sentenced to 42 months in prison after pleading guilty to one count of Possession of Child Pornography, 18 U.S.C. §2252A(a)(5)(B). Doc. 39.

I was sentenced to 15 years of supervised release after my release from Bureau of Prisons (BOP) custody, and that term of supervised release began on August 21, 2012. I have now served 9 years of supervised release.

On May 9, 2018 I filed a first motion to terminate my term of supervised release. Doc. 42. That motion was denied by this Court on May 29, 2018. Doc. 44.

More than three years have passed since then and now, for the reasons stated in this brief, I renew my request for early termination of supervised release.

## II. Prior Arguments

For the purposes of this brief, I will assume that the basis of jurisdiction and this Court's authority to grant this request are stipulated and need not be relitigated here. The arguments made therein stand and, again, will not be rehashed in this brief, as it suffices that I am still in total compliance with all conditions of supervision and have maintained my status both as a disabled veteran and a certified firefighter.

## III. Present Argument Summary

Herein I will address several issues from this Court's denial of my first motion. Newer case law has rendered some of the reasoning behind that denial as outdated precedent. Next I will discuss newer policy of the Judiciary as a basis for this renewed motion. Finally, I will update this Court on my present life and re-urge my request for early termination of supervised release.

## IV. The Denial of my First Motion

In this Court's denial of my first motion, several arguments were made that I wish to address here. In relevant part those issues are (1) the reliance on *United States v. Lussier,*

104 F.3d 32 (2nd Cir. 1997), (2) The expectation of compliant conduct and that compliant conduct, by itself, does not warrant early termination per se, and (3) that my conduct has not been extraordinary.

First, this Court stated that "The Ninth Circuit has favorably cited the Second Circuit's decision in Lussier, holding that early termination of supervision is warrante d where the defendant demonstrates changed circumstances, such as exceptionally good behavior." Denial Order, Doc. 44 at *3.

The Second Circuit never intended for *Lussier* to create a standard by which all early termination requests were measured by. Instead, it intended "changed circumstances" such as "exceptionally good conduct" to be only an example of what *may* make a defendant appropriate for early termination.

So many lower courts beneath the Second Circuit used *Lussier* as creating a binding rule that the Circuit Court felt compelled to retract Lussier in 2016. See *United States v. Parisi,* 821 F.3d 343 (2nd Cir. 2016).

> "However, even though new or changed circumstances *may* justify a modification, see *United states v. Lussier,* 104 F.3d 32, 36 (2nd Cir. 1997), they are not a prerequisite to a district court's decision to modify the conditions of release." *Id.* at 345.

> "[Parisi] contends that *Lussier* suggests that a modification of supervised release conditions cannot take place without some action by the defendant or a new circumstance in the defendant's life that arises afte rthe original sentence was imposed. However, this reasoning in contrary to the language of *Lussier,* which does nto *require* new or changed circumstances relating to the defendant in order to modify conditions of release, but simply recognizes that change circumstances may in some instances justify a modification." *Id.* at 347.

The reliance on this "standard" to bar modification or early termination of supervised release was never the intent of the Second Circuit. Instead, it was simply one example of what would constitute grounds to modify or terminate a term of supervised release.

The reliance on *Lussier* to bar early termination of supervised release is now barred by the same Circuit that originally decided it, and it should not now be relied upon by this

Court as a standard by which to measure a defendant's eligibility for early termination.

To be clear, exceptionally good behavior is one reason to grant early termination of supervised release, but it is not the *only* reason to grant such a request. A showing of hardship caused by supervised release is another reason to grant early termination. However, the *requirement* of a showing of hardship is an abuse of discretion. *United States v. Emmett*, 749 F.3d 817 (9th Cir. 2014).

Next, this Court states that mere compliance with the conditions of supervised release is, by itself, insufficient to warrant early termination, citing *United States v. Grossi*, No. CR 04-40127 DLJ, 2011 WL 704364, *2 (N.D. Cal. Feb. 18, 2011). *Grossi* did not base this opinion off of any language of the Ninth Circuit precedent, but off of cases that were progeny of *Lussier* in the Second Circuit. See *Karacsonyi v. United States*, 152 F.3d 918, 1998 WL 401273 (2nd Cir. June 10, 1998) (unpublished); *United States v. Rasco*, 2000 WL 45438 (S.D.N.Y. Jan.19, 2000).[1]

Both of these cases were in the several years following the decision in *Lussier*, and predated *Parisi* by 16 years. However, the sentiment is not wholly or objectively wrong. Compliant conduct *is* what is expected of a defendant, however that conduct can also be exceptional at the same time.

The average term of supervised release for crimes without a statutory requirement for supervised release is 35 months.[2] Spending more than triple that amount of time on supervised release, staying in compliance with all the multitude of conditions (including 14 special conditions) of supervised release, is itself exceptional.

For all defendants that find themselves on supervised release, nearly half have their term of supervised release revoked during their term. 43% of those will have their supervision revoked in the first year, and 82% will have their term revoked within the first 3 years.[3]

---

1 Also cited: *United States v. Yung*, 1998 WL 422795 (D.Kan. Jun. 12, 1998).
2 Federal Offenders Sentenced To Supervised Release; United States Sentencing Commission
3 Recidivism of Prisoners Released Series: 2018 Update on Prisoner Recidivism: A 9-year Follow-up Period (2005-2014); (2018) Bureau of Justice Statistics: https://www.bjs.gov/index.cfm?ty=pbdetail&iid=6266

1 Spending nine years on supervised release without a single violation or black mark of
2 any kind can, itself, be considered exceptional.

### V. Policy on Early Termination of Supervised Release has Changed

As argued in my first brief, I completed the Sexual Offender Treatment Program (SOTP) that I was ordered to attend after release from prison. At the time of my first motion, I had been a part of the aftercare/maintenance side of treatment for a year. Now, that has been four years of aftercare, nearly as much time as I spent in the main program itself. When rehabilitation treatment for addiction or other reasons is complete, the Sentencing Guidelines Manual encourages early termination. §5D1.2.

This was so at the time of my first motion, and is still relevant today.

What has changed, however, is the policy of the Judicial Conference in regards to early termination. The Judicial Conference Committee on Criminal Law promulgates Monograph 109, Vol. 8. Part E which was recently renamed to "Post-Conviction Supervision."

> "In a letter issued to the United States District Court Judges, Magistrate Judges, Federal Public Defenders, Chief Probation Officers, Chief Pretrial Services Officers, and Circuit Librarians, the Judicial Conference explained these revisions, several of which are relevant here:
> 
> - The title was changed from "Supervision of Federal Offenders" to "Post-Conviction Supervision."
> 
> - While the formal Guidance already included reference to evidence-based practices, the revised policy explicitly establishes evidence-based practices as the overall governing framework for effective supervision.
> 
> - "Lawful self-management" was added as a goal of supervision. The term is defined as "the person's demonstrated ability to not commit a crime during the period of supervision and beyond." The revised policy further explains that the justice system cannot coerce a person to act lawfully and that "the goal for each person

under supervision is lawful self-management (i.e., making personal choices not to engage in criminal behavior)."

- The current model of "controlling" and "correctional" strategies was replaced by "monitoring, restrictions and interventions." *United States v. Shaw*, 455 F.Supp.3d 1160 (D. Col. 2020)

This change to the policy guidelines was published on July 2, 2018 (Transmittal 080-40), several months after my first motion for early termination. Although Judicial Conference policy is not compelling on this Court's action, consideration of it is due.

"While the Policy conclusions of the Judicial conference may not be binding on the lower courts, they are at the very least entitled to respectful consideration." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010).

Relevant to this motion is the policy on early termination of supervised release. For a defendant who requests early termination after serving 18 months or more on supervised release, the policy here has a *presumption* in favor of early termination for those offenders who meet the following six criteria:

1) The person does not meet the criteria of a career drug offender or career criminal (as described in 28 U.S.C. §994(h)) or has not committed a sex offense or engaged in terrorism;
2) The person presents no identified risk of harm to the public or victim;
3) The person is free from any court-reported violations over a 12-month period;
4) The person demonstrates the ability to lawfully self-manage beyond the period of supervision;
5) The person is in substantial compliance with all conditions of supervision; and,
6) The person engaged in appropriate prosocial activities and receives sufficient prosocial support to remain lawful well beyond the period of supervision.

See *Shaw* at 1169 and Monograph 109, Vol. 8, Part E, §360.20(c)(1)-(6).

I meet all six criteria here, except for the first, because the offense I am convicted of

is a sexual offense. By all other accounts, I am eligible for a presumption in favor of early termination on the part of my probation officer, at the least. To bolster this, I have conferred with my probation officer and the position of the U.S. Probation Office is opposed to this request. Specifically, my probation officer communicate to me that they were not authorized to support my request here.

## VI. Updated Personal Information

I am on a reduced-intensity supervision, where I only see my probation officer four times per year. I no longer have a probation officer that specializes in sexual offenders and am now under a general probation officer's case load.

In terms of aftercare, I now only go into the therapist's office twice a year, showing how far I've come from the intense therapy I was under during the active phase of my treatment. If the treatment provider only sees me twice per year, it is easily seen that I am in no more need of intense treatment or therapy, and that my aftercare is effectively closed.

I have completed multiple classes online on recovery from pornography addiction, still volunteer my time with Team Rubicon, and have moved on with the best of my ability from this case.

Finally, my work as a qualified firefighter with the U.S. Forest Service and the Bureau of Land Management cannot be done until I'm off supervision. If done permanently, not provisionally, my work will will require out of district travel and out of state travel.

## VII. CONCLUSION

For the reasons argued in this brief, I respectfully ask and re-urge this Court to terminate the remaining portion of my supervised release term.

Submitted on this 07 day of September, 2021.

DENNIS ANTHONY BROWN
(657) 293-3150
Address withheld per F.R.Crim.P 49.1
Corona, CA 92882
skysharka2503@yahoo.com
*Pro Se* Defendant, Movant

**Dennis A. Brown**
2493 Water Way
Corona, CA 92882
(657) 293 3150

21 August 2021

Dear Honorable Judge Steven Larson

I first want to thank you and the court for your time in considering my motion. In 2009 I stood before you a different person than I am today. I was sentenced to 42 months imprisonment and 15 years supervised release. I am thankful for the sentence that I received because other than serving in the military it is the one thing that has changed me to become the person I was supposed to be.

During my imprisonment I truly learned who I was and I did not like that person and that is when I knew I had to change. I worked hard to learn and correct the addiction to pornography that I had since I was a teenager. Since my release I have also had a great support system including my family, probation officers and therapists. I am now on low intensity supervision and have completed my court ordered treatment. I am also now only on twice a year aftercare . I have also taken courses on pornography and sex addiction on my own. I am grateful to the probation officers and therapists I have had in the help and support they have given me. I am truly sorry for my crimes and know there is no one to blame but myself and understand that the children in the pictures were real victims and not just images.

I also started to serve again by volunteering with a veteran disaster relief organization called Team Rubicon. I received my wildland firefighting certification through them as well as FEMA incident command training and am interested in becoming a full time wildland firefighter. I have had opportunities with The US Forest Service and Bureau of Land Management to work as a casual or fill in on fire crews but had to turn them down because of the travel restrictions. I Know I have more years of service and ask that you please

consider this in my request. I will also continue to volunteer because that is what I love.

I will conclude with just saying thank you for whatever your decision is. I am grateful for what the court has done for me in becoming a better person, a better husband, a better son.

Sincerely,

Dennis A. Brown

*Den A. Bun*

*This Certificate is Awarded to*

**DENNIS BROWN**

*For the Successful Completion of*

S-130 Fire Fighting Training, S-190 Introduction To Wildland Fire Behavior, L-180 Human Factors in the Wildland Fire Service

COURSE NUMBER - COURSE NAME

03/02/2018   -   03/05/2018

COURSE START and END DATES

**Chuck Russell**

Lead Instructor Name (printed)

Lead Instructor Signature

**National Interagency Fire Center**

Host Unit

**Thousand Oaks, CA**

Location (City, State)



NFES 1272 PMS 921-1 (06/07)

## INCIDENT QUALIFICATION CARD

| Printed | Name | Employee ID |
|---|---|---|
| 03/16/18 | Brown, Dennis Anthony | 00000121238 |
| RT-130 Exp | WY-CDC | Fitness **Arduous** |
| 03/02/19 | Cody Interagency Dispatch Center | Expires 03/02/19 |

### QUALIFIED POSITIONS

| Status | Position | Description | Curr Exp |
|---|---|---|---|
| Q | FFT2 | Firefighter Type 2 | 03/13/23 |

Fold Card Here

ECI: 142731

| Ceritfying Official | Title | Date |
|---|---|---|
| [signature] | fms | 3/16/18 |

CERTIFICATE OF SERVICE
FOR PRO SE DOCUMENTS

I, DENNIS ANTHONY BROWN, do hereby certify that I have served a true and correct copy of the following document,

**SECOND MOTION TO
TERMINATE DEFENDANT'S
SUPERVISED RELEASE TERM**

upon the court and the office of the United States Attorney:

**Priya Sopori**
Locke Lord LLP
300 S Grand Avenue
Suite 2600
Los Angeles, CA 90071

**Clerk of the U.S. District Court**
Central District of CA - Riverside
Geroge E. Brown, Jr. Federal Bldg.
and U.S. Courthouse
3470 Twelfth Street
Riverside, CA 92501

by placing it in a sealed, postage prepaid envelope by United States Postal Mail

on the __07__ day of __September__, 2021.

_____
DENNIS ANTHONY BROWN
*Pro Se* Movant



SGL

Inactive Judge

Clerk of U.S. District Court
George E. Brown Jr. Federal Bld.
and US Courthouse
3470 Twelfth Street
Riverside CA 92501

RECEIVED
CLERK, U.S. DISTRICT COURT
SEP - 9 2021
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION   BY DEPUTY



Mr. Dennis A. Brown
2493 Water Way
Corona, CA 92882-6815